**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1203
_____

UNITED STATES OF AMERICA

v.

DANIEL RODRIGUEZ,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-12-cr-00005-001)
District Judge: Honorable Christopher C. Conner

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 8, 2014

Before: FUENTES, FISHER, and KRAUSE, *Circuit Judges*

(Filed: January 28, 2015)
_____

OPINION[*]
_____

FUENTES, *Circuit Judge*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

A jury found Daniel Rodriguez guilty of possession with intent to distribute cocaine and possession of a firearm in furtherance of a controlled substance offense. On appeal, Rodriguez argues that the government's comment during closing argument that "[t]here is nothing more dangerous than an armed drug dealer with a gun driving through a neighborhood" was inflammatory and constituted improper vouching. Reviewing for plain error, we affirm the District Court's judgment of conviction.

I.

On April 2, 2011, Rodriguez was pulled over after Arlon Schools, a Pennsylvania State University campus police officer, observed his car swerving. Officer Jeffrey Levan of the Highspire Police Department arrived at the scene of the stop a few minutes later. As they approached Rodriguez's vehicle, both officers smelled a strong odor of marijuana. Suspecting that Rodriguez was under the influence of either alcohol or a controlled substance, Officer Levan asked Rodriguez to step out of the car so that the officers could perform a series of field sobriety tests. Rodriguez was visibly cold standing outside in a t-shirt in the thirty-degree weather. Officer Levan noticed a jacket in Rodriguez's car and offered to retrieve it, but Rodriguez refused. After he failed all three field sobriety tests, Officer Levan brought Rodriguez to the Harrisburg Hospital for a medical examination and blood testing, which confirmed that Rodriguez had ingested marijuana within 12 hours of the test.

A private towing service brought Rodriguez's car to an impoundment center, after which Officer Levan obtained a search warrant. During his search of the vehicle, Officer

Levan found small bags of crack cocaine, empty plastic bags, 500 dollars in cash, a burned marijuana joint on the floor of the driver's seat, and a kitchen scale. He also found a .40 caliber semiautomatic pistol inside the pocket of the jacket that was in the vehicle.

In a two-count indictment, Rodriguez was charged with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a controlled substance offense, in violation of 18 U.S.C. § 924(c)(1). At trial, Rodriguez's defense attempted to undermine the integrity of the police investigation. Defense counsel argued the police failed to document key portions of the investigation, changed their accounts of certain details, and made misrepresentations in the search warrant affidavit. Counsel for Rodriguez also contended that Officer Schools and Officer Levan had no legitimate reason to make the stop. For example, defense counsel stated that Officer Schools was "bored" as a campus police officer and that "[t]here's nothing better for Officer Schools than to go out and pal around with these guys in Highspire. He wants the action." App. 174, 373. After highlighting inconsistencies in their testimony, counsel stated that "these guys are covering for each [other], Levan and [S]chools, they've worked together before. . . . You know, it's like you tell your buddy, you lie and I'll swear to it." App. 373-74. Furthermore, defense counsel suggested that Officer Levan planted the drugs and the gun in the vehicle. *See, e.g.*, App. 374 (explaining that "[t]here were a lot of backup officers" who "[d]idn't see any gun or drugs in the car," and, "[i]n fact, no one saw any guns or drugs in the car until Levan pops out there at 10:00 in the morning").

The government made the following assertion in its closing argument at trial:

3

Not only is he a drug dealer, Mr. Rodriguez is a drug dealer with a gun, and I told you before that this is an important case to Mr. Rodriguez. It is also an important case for the citizens of the community. There is nothing more dangerous than an armed drug dealer with a gun driving through a neighborhood after midnight and before sunrise. Is there any reason, is there any wonder why these officers instinctively back each other up . . . at night when these stops take place. What the police did we submit was right.

App. 359. Rodriguez did not object to this comment during trial.

After deliberating for one hour, the jury returned a guilty verdict on both counts. The District Court sentenced Rodriguez to twelve months' imprisonment on the drug conviction and sixty months' imprisonment on the firearm conviction.

## II.

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the District Court's judgment of conviction pursuant to 28 U.S.C. § 1291.

On appeal, Rodriguez contends that the government's closing argument was improper. Because Rodriguez did not object to the government's statement during trial, we review for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To establish plain error, Rodriguez must show (1) an error, (2) that is obvious, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 733-34.

## III.

According to Rodriguez, the government's assertion during closing argument that "[t]here is nothing more dangerous than an armed drug dealer with a gun driving through

4

a neighborhood" was obviously improper because it was both inflammatory and constituted vouching. It was inflammatory, Rodriguez maintains, because it was meant to appeal to the prejudices of the jury and implied that Rodriguez presents a danger to the community despite the lack of any violence in this case. *See United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000) ("A prosecutor may not make comments designed to inflame the passions or prejudices of the jury. . . . And a prosecutor may not ask jurors to find a defendant guilty as a means of promoting community values, maintaining order, or discouraging future crime."). Similarly, Rodriguez argues that the statement was improper vouching, which occurs when a prosecutor makes an assurance "based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Lee*, 612 F.3d 170, 195 (3d Cir. 2010). Although there was no evidence of violence, the government intimated in its closing argument that it had information pertaining to drugs and guns that was not before the jury.

Neither of Rodriguez's arguments has merit. The government's statement during closing argument was not error, but rather, a reasoned response to defense counsel's allegations of police ineptitude and misconduct. Rodriguez's counsel suggested during trial that Officer Schools and Officer Levan effectively conspired to stop Rodriguez without basis. The government, in its closing, sought to dispel any notion of foul play on the part of the police by explaining that "officers instinctively back each other up . . . at night" because "[t]here is nothing more dangerous than an armed drug dealer with a gun." App. 359. The government urged the jury to find that "[w]hat the police did . . . was

5

right." App. 359. Thus, read in context, the closing statement did not direct the jury to convict Rodriguez in order to protect the community and was not otherwise inflammatory; instead, it was a justified response to defense counsel's attack on the integrity of the investigation. *See United States v. Pungitore*, 910 F.2d 1084, 1127 (3d Cir. 1990) ("The rebuttal summation did no more than refute what was an obvious inference from the appellants' closing arguments, namely that the prosecutors and law enforcement officers had engaged in fabrications and misconduct."). Moreover, the government's closing argument was not improper vouching because it was grounded in record evidence. The search of Rodriguez's vehicle revealed evidence supporting the assertion that he was an "armed drug dealer," specifically, a firearm, drugs, small bags, and a scale. App. 359.

Even if we were to find the government's statement an error, we still would not reverse Rodriguez's conviction because he fails to show that the error affected his substantial rights or the fairness of the proceedings. "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context." *United States v. Young*, 470 U.S. 1, 11 (1985). "The type of counsel misconduct that warrants granting a new trial is not generally a single isolated inappropriate comment, but rather repeated conduct that permeate[s] the trial." *United States v. Riley*, 621 F.3d 312, 339 (3d Cir. 2010) (internal quotation marks omitted) (alteration in original). In addition to the significant evidence against Rodriguez and the isolated nature of the government's comment, the District

Court instructed the jury on multiple occasions throughout trial that the attorneys' arguments were not evidence. In view of all this, we cannot conclude that the government's closing argument was improper.

IV.

For the foregoing reasons, we affirm the judgment of conviction.